IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PACIFIC DRILLING, INC. and <br> GARD P. & I. (Bermuda) Ltd. <br> <br> *Plaintiffs*, <br> <br> v. <br> <br> NATIONAL OILWELL VARCO, L.P. and <br> PARKER-HANNIFIN CORP. <br> <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | C.A. NO. 4:17-CV-1474 <br> Admiralty 9(h) |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Pacific Drilling, Inc. and Gard P. & I. (Bermuda) Ltd. (collectively "Plaintiffs"), file their Original Complaint against National Oilwell Varco, L.P. and Parker-Hannifin Corp., and would respectfully show as follows:

### JURISDICTION

1. This Court has admiralty jurisdiction under 28 U.S.C. § 1333. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

### PARTIES AND SERVICE OF SUMMONS

2. Plaintiff, Pacific Drilling, Inc. ("Pacific"), is an entity organized under the laws of a foreign state, but with a principal office in Houston, Texas.

3. Plaintiff, Gard P. & I. (Bermuda) Ltd. ("Gard"), is a foreign entity organized and existing under the laws of a foreign state.

4. Defendant, National Oilwell Varco, L.P. ("NOV"), is a foreign entity organized and existing under the laws of a foreign state, but licensed to do business in the state of Texas. It

may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5. Defendant, Parker-Hannifin Corp. ("Parker") is an entity organized and existing under the laws of a foreign state, but licensed to do business in the state of Texas. It may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## FACTS

6. On October 20, 2015, the drillship PACIFIC SANTA ANA was operating in the United States Gulf of Mexico. At all relevant times, the vessel was managed by Pacific Drilling Services, Inc. and entered for protection and indemnity coverage with Gard.

7. During drilling operations on October 20, 2015, a crew member of the PACIFIC SANTA ANA was tragically killed when he was struck in the head by a drill-pipe that recoiled due to a malfunction of the vessel's Hydra-Racker System.

8. The Hydra-Racker System was designed and manufactured by NOV. Part of that system included pneumatic cylinders that were designed, manufactured and serviced by Parker. The Hydra-Racker System was in place aboard the PACIFIC SANTA ANA as part of the original equipment of the drillship upon delivery. It was serviced and maintained, in part, by NOV pursuant to its Master Purchase Agreement ("MPA") with Pacific dated May 27, 2010 and all supplements/amendments to same. Under the MPA, NOV spares and parts were procured by Pacific in order to maintain the Hydra-Racker System.

9. At the time of the incident, the pipe that ultimately struck the decedent had been obstructed by a latch on the lower finger-board that did not release as it should have. This was due, in whole or in part, to mechanical and material failures of the pneumatic cylinder. The

Hydra-Racker continued to exert force on the pipe until it overcame the resistance applied by the latch; it then recoiled from the Hydra-Racker System and fatally struck the decedent.

10. Before any lawsuit was filed on behalf of the decedent's estate, his widow and three children, Pacific had an opportunity to settle and obtain a global release of all claims which could have been asserted by, through or under the decedent, his survivors and/or estate.

11. On March 18, 2016, a Full and Final Release was executed by the decedent's widow, individually, as personal representative of the decedent's estate, and as next friend for the three minor children. Pacific and Gard provided reasonable consideration to obtain the global release, which covered NOV and Parker as "released parties."[1]

### CONTRIBUTION UNDER THE GENERAL MARITIME LAW

12. By including all potentially liable third-parties in the global release with the decedent's survivors and the estate—even though none of them contributed to the settlement—Pacific and Gard preserved their common-law right to contribution under the general maritime law. Specifically, in *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, the U.S. Fifth Circuit held that a settling tortfeasor may bring an action for contribution when it obtains, as part of its settlement with the claimant, a full release for all parties. 615 F.3d, 599, 603 (5th Cir. 2010). In order to bring a claim for contribution against the non-settling tortfeasors, the settling tortfeasor must have (1) paid more than it owes to the claimant, and (2) have discharged the claimant's entire claim. *Id.*

13. In this matter, the decedent was a Jones Act seaman who was tragically killed while working aboard the drillship, PACIFIC SANTA ANA. The claims of his widow, children and

---

[1] The Full and Final Release contains a Confidentiality Provision in which the terms of the release and any reference to monetary settlement are to remain confidential. If it becomes necessary, Plaintiffs will submit the settlement and release to this Court under seal at the appropriate time.

estate were admiralty/maritime claims for which a full-and-final settlement and release was obtained that extinguished all claims that could be made by, through or under those entities. In the course of investigating the cause of the incident, Pacific and Gard have determined there is substantial evidence of multiple issues affecting the safe operation of the Hydra-Racker about which NOV knew, but failed to remedy.

14. The pipe that struck and killed decedent was obstructed when a latch on the lower fingerboard was not in the open position (as it should have been) when the pipe was being extracted by the Hydra-Racker System. This occurred, in whole or in part, because of material and mechanical defects of Parker's pneumatic cylinder, which leaked at the time of the incident and in subsequent testing of the cylinder. This type of defect was the subject of several NOV Safety Alerts prior to the date of incident.

15. There was no warning or alarm on the Hydra-Racker System to indicate to Pacific's crew that the latch did not open and was obstructing the movement of the pipe. Additionally, there was no fail-safe mechanism to shut down the Hydra-Racker safely in the event of an overload situation such as the one which led to decedent's fatal injuries.

16. The acts, omissions, and failures set forth above establish the liability of NOV and Parker under the following theories:

    a) negligence;

    b) defective designs of the Hydra-Racker System and pneumatic cylinder;

    c) manufacturing defects of the Hydra-Racker System and pneumatic cylinder;

    d) marketing defects of the Hydra-Racker System and pneumatic cylinder; and,

    e) breach of their warranties of fitness for a particular purpose for their respective products.

### DEFENSE AND INDEMNITY UNDER THE MASTER PURCHASE AGREEMENT

17. Under the Master Purchase Agreement, NOV was obligated to defend, indemnify and hold Pacific harmless from and against any claim, demand, cause of action, damage, loss, liability or expense (including reasonable attorney's fees and expenses) asserted by any person for any personal injury or death caused or contributed to by NOV's negligence.

18. Mr. Whitley's death aboard the PACIFIC SANTA ANA was caused by the negligence of NOV.  Therefore, Pacific seeks defense and indemnity, including the payment of reasonable attorney's fees and expenses, under the terms of the Master Purchase Agreement.

### ADDITIONAL INSURED STATUS UNDER THE MASTER PURCHASE AGREEMENT

19. Under the Master Purchase Agreement, NOV was obligated to provide and maintain various insurance coverages including Workers' Compensation, General Liability, and Umbrella Excess Liability.  As to those policies, NOV was to cause its insurers to waive subrogation against Pacific, name Pacific as an additional insured, and acknowledge that NOV's policies were primary and that no claims for contribution would be made against any of Pacific's insurance policies.

20. Pacific demands coverage under NOV's policy/policies as an additional insured for the incident resulting in the death of Mr. Whitley.  To the extent that NOV failed to procure the coverages specifically required by the Master Purchase Agreement, then NOV breached its contract with Pacific and is liable in damages, and for attorney's fees and expenses.

### DAMAGES

21. As a result of the foregoing, Plaintiffs sustained damages in the amount of its settlement with the decedent's survivors and the estate, for which they now seek contribution from NOV and Parker.

22. Plaintiff, Pacific, also seeks defense and indemnity from NOV under the Master Purchase Agreement, including reasonable attorney's fees and expenses.

23. Plaintiff, Pacific, further seeks coverage under NOV's policy/policies as an additional insured for the incident resulting in the death of Mr. Whitley. To the extent that NOV failed to procure the coverages specifically required by the Master Purchase Agreement, NOV is liable in damages, and for attorney's fees and expenses.

### PRAYER FOR RELIEF

For these reasons, Plaintiffs pray that this Honorable Court enter judgment against Defendants for the amount of Plaintiffs' claim, including attorney's fees, expenses, costs of court, all interest permitted by law, and all other and further relief to which Plaintiffs may show themselves justly entitled to receive.

Respectfully submitted,

*/s/ Robert L. Klawetter*

Robert L. Klawetter
Fed. I.D. No. 2471
State Bar No. 11554700
klawetter@easthamlaw.com
Christina K. Schovajsa
Fed. I.D. 25142
State Bar No. 24002910
schovajsa@easthamlaw.com
James T. Bailey
Fed. I.D. No. 30347
State Bar No. 24031711
bailey@easthamlaw.com
808 Travis Street, Suite 1300
Houston, TX  77002
Telephone:  (713) 225-0905
Facsimile:   (713) 225-2907

*Attorneys for Plaintiffs,*
*Pacific Drilling, Inc. and Gard P. & I. (Bermuda) Ltd.*